The opinion of the Court was delivered by
Glover, J.
A consideration of the grounds, on which the motion for a non-suit was made in the Circuit Court, will necessarily embrace the grounds of appeal.
The motion was granted mainly on the ground, that the testimony to prove a contract, for the sale of stock, with the plaintiff by the defendant through Wilde, King, or Dearing, was not sufficient to require the intervention of a jury.
On the plaintiff rests the onus of proving the contract which he has alleged, and of showing “ that he is in a condition to maintain his action.”
Wilde’s letter, dated June 7,1845, addressed to William Dearing & Sons, opens the correspondence respecting the contract, and explains, in its inception, the terms of their agreement and the relations of the parties. A plain interpretation of the language shows, that Wilde was the agent of McKinley and not of the corporation. His authority is expressly referred to the power, by which McKinley had constituted him a special agent, to transfer the stock to King, who controlled the sale.
That Wilde corresponded in his official character, or that King, the president of the corporation, was authorized to sell, cannot fasten on the defendant the liabilities of a principal, contrary to the explicit language of the letter.
By the general usage, practice and course of business of *195 Banks, their whole moneyed transactions are conducted through the cashier as an executive officer : and it is argued, that these powers are large enough to meet this case., But the answer is, that his agency was derived from, and delegated by, McKinley; and that there is no testimony showing any act of the corporation directing a transfer and sale of this stock ; nor can the adoption or recognition of the acts of Wilde, King, or Dearing, be inferred or implied from the official signature of the cashier, and the other circumstances relied upon, which are too slight and inferential to weigh against the plain meaning of the letter.
Although a consent made known through its common seal is not indispensable to bind corporations, and they may be bound in any mode pointed out by the charter ; yet the evidence of consent must be produced. ' The 3lst Sect, of the Act incorporating the Georgia Railroad & Banking Company provides, that contracts shall not be obligatory on the corporation unless signed by the president and countersigned by the cashier ; and it is insisted, that the letters offered in evidence are a virtual compliance with the terms of the charter. This statutory provision may be satisfied by an informal signing. But the president’s letter, in no way can be considered a signing within the provisions of the Act, to prove a contract with C. T. Mitchell on behalf of the corporation. So far from recognizing the contract with Wilde, he supposed, that it had been cancelled. The 46th Sect, of the Charter prescribes the mode of transferring stock by the debtors of the Bank, and limits any authority which the cashier possesses, derived from his powers as an executive officer. The charter also creates a lien on the stock of its debtors in favor of the company, and an amendment of the Act of incorporation, passed in 1843, authorizes a sale of the stock, bound by such lien, to be made as in the case of the foreclosure of mortgages of personal property. There was no evidence that the sale was ever made in the mode prescribed by this amended Áct, and that the stock had been transferred to, or vested in the . corporation by such sale.
Wilde was a special agent whose power was delegated by *196 McKinley, and if there was any doubt respecting his character, it was the duty of the party dealing with him l£ to ascertain the nature and extent of his authority,” and if departed from or exceeded, he must be content to abide the consequences. (Pa-loy on Agency, by Lloyd, p. 199, note.)
In what relation is the defendant placed, by this correspondence, with William Bearing & Sons ? The argument assumes, that they were agents of the corporation in negotiating the sale, and that the letters, and the fact that Wm. Dealing had once been the president of, and had transacted business for, the corporation, establish this assumption. These circumstances are too slight to justify such an inference, especially against the language of the parties. Wilde’s letter of 7th of June does not constitute Dealing & Sons stock brokers in behalf of the Bank or of McKinley; but they are invited to become purchasers on their own account. A broker is a mere negotiator between the other parties and he never acts in his own name, but in the name of those who employ him: as a middle man he cannot fix the terms, but interprets between the principals; (Story on Agency, 31.) That a proposition to purchase should create a brokerage would confound the distinctions between purchaser and broker, which are, plain and well settled. Wilde’s first letter is a proposition to sell, his second excuses the neglect of transferring the shares, and King’s letter expressed a supposition, that the contract had been cancelled, and stated, that the difficulty of perfecting the agreement arose from the necessity of proceedings to foreclose as the Act prescribes.
A verdict for the plaintiff found on such testimony and thereby-establishing the liability of the defendant as a principal, acting by the agency of Wilde, King and Dealing, would have been not only palpably against, but without, evidence.
The defendant also rested his motion for a non-suit on the ground, that the plaintiff had failed to prove payment, or a tender, of the price of the stock, either by himself or by Dealing in his behalf. Unless Dealing & Sons acted as the agents of defendant and not of McKinley, it cannot be pretended that there was the slightest proof of a tender.
*197 The agreement alleged was executory, in which a transfer or tender by the corporation,'or a payment or tender of payment by C. T. Mitchell, must be averred and proved before either can recover damages for a breach — (Kingston vs. Preston, Doug. 689; Calonel vs. Briggs, Salk. 113.) Where no time is agreed on for payment, the payment and delivery are concurrent acts, to be done at the same time — (2 Kent’s Com. 390.)
The plaintiff has averred that he was ready to pay and offered to pay. The allegation is material and must be proved. (Morton vs. Lamb, 6 T. R. 121.) He cannot impute to the defendant a non-performance of the agreement, unless he prove that he was ready to pay and made a tender of the price. “If there be a' tender of the money, the money must in general be produced: and must be paid into Court, so that the other party may take possession of it (Miller vs. Hilliard & Wade, Chev. 149.)
W. Dealing & Sons’ letters are referred to as evidence of a tender. Their language is, “ We bought of J. W. Wilde, cashier, the stock of Charles G. McKinley for Charles T. Mitchell. He is very desirous of having his certificate and paying the money.”
The desire and ability of a vendee to pay is no evidence of an offer to pay, nor will these circumstances prove a tender; which requires the production of the money, unless dispensed with, that it may be in the vendor’s power to receive and take it.
It was urged, that the transfer of the stock was a condition precedent to the payment. There is a class of cases referred to by Lord Kenyon in Morton vs. Lamb, depending on the order in which the several things are to be done, and to which this principle is applicable. The performance of an act will, in all such cases, be a condition precedent to the payment. The cases of Breithaupt vs. Thurmond, 3 Rich. 221, and Dubignon vs. Loud, 5 Rich. 251, recognize this principle in its application to the sale of real estate. The agreement alleged by the plaintiff, comes within the rule laid down in Morton vs. Lamb, which required performance on his part, by the proof of a tender of the price, and this the evidence has not shewn.
*198 It is important, to preserve the distinction between questions of law and of fact, submitting the decision of each to the proper tribunal, and the practice of this Court is not to withhold from the jury the consideration and decision of questions of fact. But where there is no evidence, or no evidence on which they may raise a fair presumption of that which they are called upon to find, it would be fruitless to ask the expression of their opinion, and a non-suit should be ordered. The exercise of a Judge’s discretion, on such occasions, must not supersede the proper functions of the jury, and will always depend on the circumstances of each case.
This Court is satisfied with the judgment of the Circuit Judge, and the motion is dismissed.
O’Neall, Wardlaw, Frost, Wxthee.s and Whitner, JJ., concurred.

Motion dismissed.